IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KENNETH SHARPLES, <br> K92574, <br><br> Plaintiff, <br><br> vs. <br><br> J.B. PRITZKER, et al., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 21-cv-1065 <br> ) <br> ) <br> ) <br> ) <br> ) |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Kenneth Sharples, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Western Illinois Correctional Center (Western), brings this civil rights action for alleged deprivations of his constitutional rights at Menard Correctional Center (Menard). (Doc. 1). Plaintiff's original complaint was dismissed for multiple reasons, including failure to state a claim and the immunity of various defendants. (Doc. 18). Plaintiff's Amended Complaint (Doc. 20) was also dismissed for violations of the Federal Rules of Civil Procedure. Notably, Plaintiff's Amended Complaint contained 43-pages of factual allegations (plus 80 pages of exhibits) and it presented claims against 30 named defendants and 231 "John Doe" defendants. The Court found that such a vast and often ambiguous complaint was insufficient to meet the "short and plain statement" requirement for pleading a valid claim. Plaintiff was clearly warned that if he wished to file an amended pleading, he would need to narrow the scope of the claims presented to clearly identify a claim or subset of related claims against a

defendant or related defendants. Plaintiff's Second Amended Complaint is now before the Court, but it fares no better.

Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Second Amended Complaint

Plaintiff's Second Amended Complaint is 137 pages, and it presents claims against approximately 23 named defendants and at least 199 "John or Jane Doe" defendants. (Doc. 26 at 2-5). Many of the paragraphs in the Second Amended Complaint are carbon copies of one another. For example, Plaintiff alleges:

> Defendant John Doe # 1 violated memorandums dated: 4/2/2020, 8/16/2021, and 77 Ill. Admin. Code § 690.361(A)(2) failure to wear proper PPE's during the dates of 3/8/2020 through 3/8/2022 which violated plaintiff's constitutional rights 8th, 14th, torts negligence, intentional infliction of mental and emotional distress. These acts introduced Covid-19 virus into the institution, which caused Plaintiff actual physical harm as plaintiff was twice infected with Covid-19.

(Doc. 26 at 9, ¶ 39). This paragraph is repeated verbatim from paragraph 39 all the way thru paragraph 233. Most of the defendants named in association with this claim are John Does, although Plaintiff also identifies 16 individuals by name in association with an identical allegation. (*Id.* at ¶¶ 39-233).

In addition to this paragraph, Plaintiff's Second Amended Complaint contains many additional paragraphs that are repetitive. He covers topics such as: violations of Illinois law for failing to maintain cleaning and sanitation standards; violations of law or policy for failing to investigate Covid-19 infections; failures to enforce memorandums regarding Covid-19; the existence of policies, customs, or practices of failing to maintain adequate Covid-19 safeguards; failures to follow proper Covid-19 quarantine protocols; denials of medical care for Covid-19 infection; improper conditions of confinement in quarantine cells (to include lack of bedding, sanitation, ventilation, climate control, etc.); lack of due process prior to placement in quarantine; violations of equal protection; failure to protect him from contraction of Covid-19; and, the denial of medical treatment in retaliation for the filing of grievances.

By way of example, there are some paragraphs that associate discrete facts with individual actors.

> Defendant Ritz (Wexford Health Sources) was personally aware of the conditions, customs and practices of there "on-site" staff and of IDOC staffs disregards of policies by reports, grievances, mass resignation of staff at Menard C.C., also Plaintiffs written letter to Wexford Health Sources Corporate office dated: 9/9/2021 within Menard C.C. between the dates 3/8/2020 through 3/8/2022 which shows official encouragement of and/or turning blind eye to acts, which violated plaintiff's constitutional rights 8th, 14th, torts negligence, intentional infliction of mental and emotional distress, which caused plaintiff actual physical harm.

(Doc. 26 at ¶ 332). However, there are also paragraphs that lump together numerous defendants. For example,

> Plaintiff was subjected to conditions of confinement, and denial of due process and equal protection which triggered 8th, 14th Amendment violations by defendants Pritzker, Jeffreys, Ritz, Bowman, Wills, Siddiqui,

> Crain, Skidmore, Sgt. Harris, Sgt. Bebout, Lt. Bump, J. Doe # 34, 35, 36, 51, 52, 53, 68, 69, 70, 85, 86, 87, 93, 94, 101, 102, 103, 130, 131, 132, 136, 137, 138, 142, 143, 144, 148, 149, 150, 157, 158, 159, 166, 167, 168, 170, 171, 172, 173, 174, 175, 176, 182, 183, 184 deliberately and negligently acted in failing to enforce and investigate the widespread "customs and practices" within Menard C.C. which lead to the wide spread Covid-19 infections.

(Doc. 26 at ¶ 369).

As relief, Plaintiff seeks an injunction mandating that all staff, contractors, vendors, health care providers, visitors and volunteers at all IDOC facilities be vaccinated. (*Id.* at p. 130). He also seeks many separate awards of monetary compensation against various groups of defendants. (*Id.* at pp. 130-136).

## Analysis

Plaintiff's Second Amended Complaint is unacceptable for reasons explained in relation to his Complaint and his First Amended Complaint. (Docs. 18, 23). Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Under Rule 8(d), "each allegation must be simple, concise, and direct." Plaintiff's Second Amended Complaint is anything but short and plain. The Court would have to engage in a complex diagramming exercise to even discern how many separate claims might exist in this lawsuit, which of the nearly 200 John/Jane Doe defendants are associated with said claims, and what amount of monetary compensation is sought in association with the discrete claims. "District courts should not have to read and decipher tomes disguised as pleadings." *Lindell v. Houser*, 442 F.3d 1033, 1034 n.1 (7th Cir. 2006). If a complaint is so complex and incomprehensible that the Court would have to engage in an extensive analysis to even attempt to parse

claims, dismissal is an option. *See e.g.*, Rosas v. Metropolitan Correctional Center – Chicago, 2018 WL 8803759 at * 2-3 (N.D. Ill. Nov. 21, 2018) (dismissing an omnibus complaint because the court need not attempt to interpret a complaint that concerns a plethora of claims against 12 defendants that span 2 years); Kadamovas v. Stevens, 706 F.3d 843, 844 (7th Cir. 2013) (a district court has "a right to dismiss a complaint that is so long that it imposes an undue burden on the judge to the prejudice of other litigants seeking the judge's attention).

Here, the Court has already expended considerable efforts reviewing the original and First Amended Complaint, and it has provided a careful analysis of some of the potential infirmities of those pleadings. Most significantly, the Court has tried to emphasize the fact that Section 1983 liability relies on the personal responsibility of the defendants for discrete actions that result in harm of a constitutional magnitude. (Doc. 18 at 12; Doc. 23 at 3). Perhaps Plaintiff misunderstood the Court on this point---he did repeat paragraphs one-by-one against many individuals *ad nauseam*. This might have been an effort to illustrate each individual defendant's role in his alleged grand harm—contracting Covid-19 on one or two occasions.

But, even if Plaintiff's effort to repeat paragraphs was made in good faith, many of the repeated paragraphs concern issues that the Court warned him did not give rise to a federal claim under § 1983. For example, Plaintiff alleges tirelessly that defendants violated two memorandums and an Illinois law concerning the use of personal protective equipment (PPE), violations which he alleges ultimately led to him contracting Covid-19. The violation of internal policies or state laws do not give rise to a § 1983 claim. (Doc. 23

at 4-5); *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) ("42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations.").

The practice of repeating paragraphs against numerous John/Jane Does—at least 199 of them—was also fruitless. While it is understandable that an inmate may not always know the exact name of an intended defendant, the naming of 199 or more unidentified defendants makes it seem highly unlikely that Plaintiff could ever accurately identify specific individuals, let alone make out individualized claims against them for their personal involvement in issues that have arisen over the course of two-years of his incarceration. Plaintiff identified approximately 170 John/Jane Does whom he alleges violated his rights by interacting with him at some point between March 8, 2020 and March 8, 2022, without the proper use of PPE. (Doc. 26 at ¶¶ 39-217). But does he have any idea who these people are? How often they interacted with him? If the interaction was of sufficient length and proximity to even pose a risk of exposing him to Covid-19? These details are the sort of information that would be required to take Plaintiff's claims from generic and speculative to plausible. Rather than give any specifics that might later lead to positive identification of these individuals, Plaintiff simply repeated verbatim the same exact allegations against every single one of these Doe defendants for more than 100 paragraphs.

Plaintiff's allegations about the use of cleaning or sanitation procedures, the failure to investigate Covid-19 infections, the failure to enforce policies in memorandums about Covid-19, the failure to follow quarantine protocols, the denial of medical care, and many

other topics are equally vague.  The Court read the Second Amended Complaint with a discerning eye for any allegation that might provide sufficient detail to state a plausible claim, but there really were none.

At best, Plaintiff alleged "Defendant Dearmond denied Plaintiff medical treatment while in Covid-19 quarantine in South Lowers between dates 10/3/2020 through 10/16/2020 which violated Plaintiff's constitutional rights 8th, 14th, torts negligence, intentional infliction of mental and emotional distress, intentional and malicious actions, which caused Plaintiff actual physical harm."  (Doc. 26 at ¶ 353).  This is one of the single most detailed and succinct allegations in the entire 137-page amended complaint.  Even this claim is insufficient as pled to make out an Eighth Amendment deliberate indifference claim against Dearmond.  Plaintiff alleges that during this time he had contracted Covid-19, which *can* be a serious medical condition, but which does not always have a strong impact on those that contract the illness.  Plaintiff never describes his own symptoms in relation to Dearmond's denial of care, so the Court cannot assess if he has alleged a plausible serious medical need.  This allegation is also lacking in detail about how Plaintiff notified Dearmond of his need for care, what Dearmond knew about his condition, or how she responded.  Absent any specifics, Plaintiff's allegations are too generic to make out a claim against Dearmond.

In addition to the claim against Dearmond, Plaintiff also makes some allegations related to the conditions of his confinement in the South Lowers cellhouse during his Covid-19 quarantine from approximately October 2, 2020, to October 16, 2020.  He alleges the cellhouse was deficient in many respects, including—a lack of sanitation and hygiene

supplies, the presence of 'contaminated' pillows and mattresses, inadequate clean air or ventilation, extremely cold temperatures, no laundry service, limited hot water, and a general lack of comfort. As a result, he alleges he suffered: fatigue, exhaustion, weight loss, a rash, blurred or double vision, headaches or body aches, vomiting, asthma attacks, shortness of breath, dirty mucus, watery eyes, sleep deprivation, body numbness or loss of sensation, and more. (*See* Doc. 26 at ¶¶ 375-379).

As with other portions of the complaint, although it may be feasible to state constitutional claims related to the conditions of confinement identified, Plaintiff's association of named defendants with the conditions is overly complicated and difficult to decipher. He identifies approximately 30 John Does with these allegations by number, claiming that on various date ranges they subjected him to these conditions, and he also identifies a wide variety of prison employees and administrators from Sergeant Brandt (*Id.* at ¶ 392) all the way to Illinois Governor, J.B. Pritzker (*Id.* at ¶ 400). Within the 'conditions of confinement' portion of his complaint, he has multiple sub-theories. He alleges that the conditions were inadequate, but also that subjecting him to the conditions was a violation of equal protection and due process, and that some officials used the quarantine cells as a form of punishment without due process. (*Id.* at ¶¶ 380-422).

The Equal Protection claim is easy enough to dispose of because Plaintiff does not identify membership in a protected class, nor does he identify "class-of-one" discrimination by comparison to a similarly situated individual who received different treatment. *See e.g. Brunson v. Murray*, 843 F.3d 698, 705 (7th Cir. 2016) (the Equal Protection Clause guards against discrimination based on race or other protected

characteristics, and it also prevents against "class-of-one" discrimination where the government irrationally singles out one person for poor treatment).

The more generic Due Process and conditions of confinement claims could in a theoretical sense be viable, but the way Plaintiff has presented them is too complex and casts too broad of a net. Plaintiff's presentation of these claims is still deficient for reasons the Court identified in the first Order of Initial Review. (Doc. 18). "The assumption underlying [Plaintiff's] choice of defendants—that anyone who knew or should have known of [a condition], and everyone higher up the bureaucratic chain, must be liable— is a bad one." *Burks v. Raemisch*, 555 F.3d 592, 593 (7th Cir. 2009). The Court also previously warned Plaintiff that he cannot name defendants in a shotgun fashion, simply stating 'one or more defendants harmed me.' (Doc. 18 at 11-12). Plaintiff's conditions of confinement section of his complaint directly disregards this prior warning by listing countless individuals in association with generic claims. For example, Plaintiff alleges

> Plaintiff was subjected to conditions of confinement which triggered 8th Amendment violations in defendant(s) Wills, Siddiqui, Crain, Skidmore, Dearmond, Bradley, Meyer, Allsup, Quick, Pierce, Cowan, Baker, C/O Cox, C/O Lee, C/O Holcomb, Sgt. Harris, Sgt. Bebout, Lt. Bump, J. Doe(s) # 1-109, 130-199 deliberate actions within Menard C.C. to disregard directives, mandates, protocols, and guidelines, which led to covid infections.

(Doc. 26 at ¶ 368). This paragraph is just one of three pled in this fashion in this small section of the complaint. Allegations presented in this fashion lack the requisite specificity to make out a § 1983 claim premised on personal involvement. *See e.g., Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a

constitutional right). "A complaint must contain enough details to connect an individual defendant's actions with a discrete harm. *See e.g.*, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); Fed. R. Civ. P. 8(a)(2).

After thoroughly reviewing Plaintiff's Second Amended Complaint, the Court concludes that he has failed to present any claims that are sufficiently detailed to make out a plausible § 1983 claim against an individual defendant. At this juncture, the Court believes that it would be futile to allow Plaintiff additional opportunities to amend his pleadings because with each amendment the claims get increasingly vague and open-ended and the complaints grow in length. Plaintiff continues to ignore the caution that he cannot use a single complaint as a forum to litigate unrelated claims against large groups of defendants. Omnibus complaints are unacceptable, and at this point, further review of Plaintiff's pleadings is taking time and judicial resources away from other litigants who may have meritorious claims. *See e.g.* Stanard v. Nygren, 658 F.3d. 792, 798 (7th Cir. 2011) (though length alone is generally not a basis to dismiss a complaint or to deny future amendments, length coupled with overall unintelligibility and failure to follow court instructions may be a sufficient basis because a court need not spend countless hours "fishing" for "a gold coin from a bucket of mud" to see if there is a sufficient claim).

Additionally, Plaintiff has not heeded the advice and feedback the Court provided about his earlier pleadings. For example, the Court clearly stated that claims related to the use of PPE per local, departmental, or state-wide directives were not sufficient to state a § 1983 claim. (Doc. 23 at 4). Despite this caution, Plaintiff included at least 194

paragraphs repeating allegations over and over about this exact issue. (Doc. 26 at ¶¶ 39-233). The Court also stressed the importance of avoiding shotgun claims that ambiguously assert that a large group caused harm (Doc. 18 at 11), but Plaintiff again included multiple paragraphs pled in shotgun fashion (Doc. 26 at ¶¶ 328, 331, 368-370). The Court also suggested that to make out a deliberate indifference to medical needs claim, Plaintiff would need to provide information about the severity of his medical condition beyond generic 'aches and pains' and he should describe circumstances when particular individuals refused or delayed care. (Doc. 18 at 10-11). Plaintiff provided no additional details about the severity of his illness, or what he did to notify defendants of the same.[1] On the whole, Plaintiff's Second Amended Complaint ignores and defies earlier suggestions, and the pleading has become increasingly difficult to dissect. Accordingly, the Court finds it appropriate to dismiss this pleading for failure to state a claim under 28 U.S.C. § 1915A(b)(1). Plaintiff will not be granted leave to file further amended pleadings because the Court believes it would be futile to allow further amendments. *Zimmerman v. Bornick*, 25 F.4th 491, 494 (7th Cir. 2022) (leave to amend can be denied if plaintiff has had multiple chances to cure a defect, but he has failed to do so).

---

[1] Plaintiff provided a laundry list of generic symptoms in association with his conditions of confinement claim, but it is not clear if he sought medical attention for those issues, if the issues were serious, how long they lasted, or if there was a permanent impact.

**Disposition**

Plaintiff's Second Amended Complaint is dismissed for failure to state a valid claim under 28 U.S.C. § 1915A.

**IT IS SO ORDERED.**

Dated: May 30, 2023



DAVID W. DUGAN
United States District Judge

**Notice to Plaintiff**

If Plaintiff wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If the appeal is found to be non-meritorious, Plaintiff could be assessed a "strike" under 28 U.S.C. § 1915(g). If a prisoner accumulates three "strikes" because three federal cases or appeals have been dismissed as frivolous or malicious, or for failure to state a claim, the prisoner may not file suit in federal court without pre-paying the filing fee unless he is in imminent danger of serious physical injury. *Id.* If Plaintiff seeks leave to proceed in forma pauperis on appeal, he must file a motion for leave to proceed in forma pauperis in this Court. *See* Fed. R. App. P. 24(a)(1).  A motion for leave to appeal in forma pauperis MUST set forth the issues the Plaintiff plans to present on appeal. See Fed. R. App. P. 24(a)(1)(C).

Plaintiff need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if Plaintiff wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. See Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule

60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).